# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 09-00015** |
| **VERSUS** | * | **JUDGE HICKS** |
| **ZEKE ELDO TETTLETON ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING[1]

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion for Rule 16 Discovery, Motion for Disclosure of Rule 404(b) Evidence, Motion for

Disclosure of Rule 12(b)(4) Evidence, Motion for Early Production and/or Inspection of Witness

Statements/Discovery of Exculpatory Evidence [Document Nos. 50, 51, 71, 72, 74, 75], and a

Motion to Sever filed by Defendants, Williams H. Maxwell ("Maxwell"), Zeke Eldo Tettleton

("Tettleton"), and Franklin E. Hutson ("Hutson") (collectively "Defendants") [Document Nos. 52,

54, 77].

For the reasons stated below, the discovery motions and the motions to sever are

**DENIED**.

## INTRODUCTION

On January 28, 2009, Maxwell, Tettleton, and Hutson were indicted jointly on one count

of structuring financial transactions in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d)(1) and

one count of conspiracy to structure financial transactions in violation of 18 U.S.C. § 371 [Doc.

#1].

---

[1] As these are not motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

<u>**LAW AND ANALYSIS**</u>

**I. DISCOVERY MOTIONS**

**A. Motion for Rule 16 Discovery**

Defendants request all discovery to which they are entitled under Federal Rule of
Criminal Procedure 16. As the Government notes, Defendants each made an oral motion for
discovery at their arraignment and the undersigned granted the motions [Doc. #19, 24, 28].
Therefore, Defendants' motions on this ground are **DENIED as moot**.

**B. Motion for Rule 404(b) Evidence**

Defendants request that the Government notify them of and identify any discoverable
evidence which it intends to use at trial pursuant to Federal Rule of Civil Procedure 404(b). The
Government states, and the record reflects, that it has already filed a notice of intent to introduce
evidence under Federal Rule of Civil Procedure 404(b) [Doc. #35].[2] The Government further
states that it does not anticipate using any other 404(b) evidence, but that Defendants' counsel
will be notified if this changes. Accordingly, Defendants' motions on this ground are **DENIED
as moot**.

**C. Motion for Rule 12(b)(4) Evidence**

Defendants request that the Government disclose all evidence and materials subject to
disclosure and discovery as provided by Federal Rule of Criminal Procedure 12(b)(4). Rule
12(b)(4) allows a defendant, in order to have the opportunity to file a motion to suppress, to
request notice of the Government's "intent to use (in its evidence-in-chief at trial) any evidence
that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4). In its
opposition memorandum, the Government informs Defendants that it may use any and all

---

[2] The Government's notice of intent to use the 404(b) evidence states that the evidence was
mailed to Defendants [Doc. #35-1].

evidence tendered to them.  Therefore, Defendants' motions on this ground are **DENIED as moot**.

### D.  Motion for Exculpatory Evidence and Early Production of Jencks Material

*1. Brady Material*

Defendants request that the Government be required to inspect its records to determine if they contain exculpatory and/or impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and request a hearing on the issue.  Defendants argue that *Brady* and its progeny place an affirmative duty on the Government to inquire of all law enforcement agents and bank witnesses as to whether any information exists which might benefit Defendants or which might impeach a witness or otherwise provide to Defendants evidence which would fall under *Brady*. In making this argument, Defendants appear to focus solely on any witness statements, statements of persons interviewed, and FBI-302 statements.  In particular, Defendants would like to read the statements of the bank tellers involved in this case, including any teller that Defendants are alleged to have instructed concerning structuring deposits.[3]

*Brady* and its progeny require the Government "to disclose to criminal defendants favorable evidence, material to guilt or punishment."  *United States v. Moore*, 452 F.3d 382, 387 (5th Cir. 2006) (citation omitted).  The Government states that it has informed Defendants that it will operate under an open file policy as to everything except witness statements, which will not be disclosed unless required by *Brady* or the Jencks Act.  With regard to Defendants' request for *Brady* material, including any such material contained in witness statements or FBI-302's, the Government has stated that it intends to abide by its duties under *Brady*.  Although it is somewhat unclear whether Defendants seek an order regarding their contention that *Brady*

---

[3] Defendants contend that it is only through these statements that it may be determined whether any commitments were made to these witnesses by the Government, such as non-prosecution, or whether there would exist any inconsistency in the witnesses statements.

requires the Government to inquire of all law enforcement officers and bank witnesses in this case as to whether they are in possession of any *Brady* material, a contention the Government appears to dispute, the undersigned is not inclined to order any specific actions on the part of the Government at this time, but rather reminds the Government that the *Brady* disclosure requirement "imposes a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police" and trusts that the Government will abide by its obligations under *Brady*. *Johnson v. Quarterman*, 306 Fed.Appx. 116, 120 (5th Cir. 2009) (citation omitted); *Morrow v. Dretke*, 367 F.3d 309, 316 (5th Cir. 2004) ("In defining the scope of the duty of disclosure, it is no answer that a prosecutor did not have possession of the evidence or that he was unaware of it.").

The undersigned does not find, however, that the Government's disclosure obligation under *Brady* mandates that Defendants be allowed to search through the Government's files in search of witness statements or FBI-302's that may contain *Brady* materials. As the Supreme Court has stated, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Although the eye of an advocate may be helpful to a defendant in ferreting out information . . . this Court has never held . . . that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary."). Rather, "[i]n the typical case where a defendant makes only a general request for exculpatory material under *Brady* . . . it is the State that decides which information must be disclosed; [u]nless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id*. In short, "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue

relevance" under *Brady*.[4]  *Id*.

The Government has stated that they will abide by their *Brady* obligation and produce any

exculpatory or impeachment evidence of which they have knowledge, and the undersigned has

no reason to doubt the Government's intention to do so at this time.  Accordingly, to the extent

that Defendants seek an order requiring the Government to abide by its *Brady* obligation, the

motions are **DENIED as moot**.  To the extent that the motions seek an order requiring the

Government to allow Defendants to conduct their own search of the Government's files for *Brady*

materials, the motions are **DENIED**.

*2. Jencks Material*

Defendants also request that the Government produce any and all written, recorded, or

transcribed statements of Government witnesses or prospective Government witnesses and all

FBI-302 statements pursuant to the Jencks Act, codified at Federal Rule of Criminal Procedure

26.2 and 18 U.S.C. § 3500, at least five (5) days prior to trial and that Defendants' counsel,

presumably prior to five days before trial, be permitted to review and make notes, but not copies,

of such material pursuant to the Government's open file policy.

The Jencks Act states as follows:

(a) In any criminal prosecution brought by the United States, no statement or
report in the possession of the United States which was made by a Government
witness or prospective Government witness (other than the defendant) shall be the

---

[4] To the extent that Defendants seek access to the statements of bank tellers involved in this case, the undersigned agrees with the Government that there is nothing to prevent Defendants from interviewing the bank tellers themselves as they were employed with the bank and are therefore aware of who else worked there. *See United States v. Cleveland*, 1997 WL 313420, *1 (E.D.La. June 10, 1997) ("[T]here is no *Brady* violation when the Government fails to turn over a witness' statements containing possibly exculpatory statements where the defense is aware of the witness and is free to question him in anticipation of trial.").  Moreover, Defendants claim that only through inspection of the bank tellers' statements can they determine whether the Government made any commitments not to prosecute the tellers.  The Government states that it has not done so and that it would have provided such information to Defendants if it had done so.

subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a).  The substance of the Jencks Act is contained in Federal Rule of Civil Procedure 26.2 (a).[5]  It is clear that "[t]he Jencks Act does not require production of a witness' statement until after the witness has testified on direct examination."  *United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998) (citation omitted).  Moreover, numerous courts, including the Fifth Circuit, have indicated that a court is not permitted to require the Government to produce Jencks material prior to the witness's testimony.  *See United States v. Campagnuolo*, 592 F.2d 852, 863-64 (5th Cir. 1979) (finding that Government could not be required by pre-trial discovery order to give defendants a copy of a government agent's written report that qualified as a statement under the Jencks Act prior to the agent testifying at trial); *United States v. Welch*, 810 F.2d 485, 489 n.2 (5th Cir. 1987) (describing *Campagnuolo* as ruling that "a pretrial discovery order was invalid to the extent that it allowed discovery beyond the limitations of the Jencks Act and stating that the court was "unaware of anything authorizing the district court to amend this mandate"); *United States v. Daigle*, 1992 WL 450106, *1 (E.D.La. Nov. 5, 1992) ("The Fifth Circuit-and every other circuit that has addressed the issue-has held that a district court has no authority to compel the government to turn over Jencks materials prior to the time set forth in the Act."); *United States v. Algie*, 667 F.2d 569, 571 (6th Cir. 1982) (same); *United States v. McMillen*, 489 F.2d 229, 230 (7th Cir. 1972) (same); *United States v. White*, 750 F.2d 726, 729

---

[5] The rule states as follows:

   **(a) Motion to Produce**.  After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

(8th Cir. 1984) (same); *contra United States v. Impastato*, 535 F.Supp.2d 732, 739 (E.D.La. 2008) ("Decisions within this jurisdiction suggest that any decision to allow early production of Jencks material is discretionary.")

Therefore, the undersigned will not order early production of Jencks material. Although not required to do so, the Government has agreed to provide Defendants with Jencks material by the close of business on the last working day prior to trial, which is the Friday before trial the Monday trial scheduled in this case, or 48 hours in advance. Even assuming the undersigned had the discretion to order early release of the Jencks material, the undersigned finds 48 hours to be sufficient for Defendants' trial preparation.[6] *See United States v. Edwards*, 2003 WL 22204534, *1 (E.D.La. Sept. 12, 2003) (noting in that in this Circuit, it is common practice for the Government to provide Jencks material 24 to 48 hours before trial and declining to require the Government to provide such material ten days before trial given that it had agreed to do so 48 hours in advance). Accordingly, to the extent Defendants' motions seeks earlier disclosure of Jencks material and the right to inspect, but not copy, all witness statements or FBI-302's of testifying witnesses, the motions are **DENIED**.

## II. MOTIONS TO SEVER

Defendants filed the instant motion to sever on the grounds that if they are tried jointly with their co-defendants (1) they will be deprived of their right to call their co-defendants as witnesses on their behalf at trial; (2) they will be prejudiced due to conflicting or irreconcilable defenses offered by them and their co-defendants; and (3) they will be prejudiced if the Government, as it has indicated an intention to do, introduces evidence at trial of other offenses, wrongs, or acts allegedly committed by codefendant Hutson pursuant to Federal Rule of Criminal

---

[6] Defendants have offered no specific reason why 48 hours before trial is not sufficient; they simply state that such will not provide sufficient time for review and discussion with counsel for codefendants.

Procedure 404(b).

The Fifth Circuit has consistently held that when persons are indicted together, they should be tried together. *United States v. McKinney,* 53 F.3d 664 (5th Cir. 1995); *United States v. Wilwright,* 56 F.3d 586 (5th Cir. 1995); *United States v. Boyett*, 2006 WL 3313746, *1 (W.D.La. Nov. 14, 2006). This rule is especially strong when defendants are charged, as they are in the present case, with a conspiracy. *United States v. Martinez-Perez*, 941 F.2d 295 (5th Cir. 1991); Boyett, 2006 WL 3313746 at *1. Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

Rule 14 of the Federal Rules of Criminal Procedure provides that a court may grant a severance of defendants when it appears that a defendant will be prejudiced by a joint trial. Fed. R. Cr. P. Rule 14. To justify severance of co-defendants, the movant must show that he would suffer specific and compelling prejudice against which the court is unable to provide protection, such as through a limiting instruction, and that this prejudice would result in an unfair trial. *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988) (citing *United States v. Toro*, 840 F.2d 1221, 1238 (5th Cir. 1988)). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539.

## A. Defendants are Properly Joined

Defendants make a general and unsupported argument that they are improperly joined under Federal Rule of Civil Procedure 8(b), which states as follows:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in

each count.

Fed. R. Crim. P. 8(b). "The propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent arguments of prosecutorial misconduct." *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) (citations omitted). Rule 8 is "satisfied by allegation of an overarching conspiracy that encompasses the substantive offenses charged." *United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995) (citation omitted). Defendants have offered no argument as to how the indictment in this case is insufficient under Rule 8, and the undersigned finds that it clearly alleges an overarching conspiracy encompassing the offenses charged. Accordingly, Defendants' motions to sever on this ground are **DENIED**.

**B. Potential Admission of 404(b) Evidence Against Hutson**

Maxwell and Tettleton argue that they will be prejudiced by the admission of evidence of prior bad acts on the part of Hutson, which is technically not admissible against either of them, in that it could prevent the jury from making a reliable judgment regarding guilt or innocence. The Government has indicated that it may seek to introduce evidence that Hutson structured a $160,000 deposit between April 12, 2001, and May 15, 2001, in order to demonstrate proof of motive, opportunity, willfulness, preparation, plan, knowledge, identity, and the absence of mistake or accident. The Government states that it has no evidence that Tettleton was involved in the prior deposit structuring it intends to introduce against Hutson, but does not contend that it has no evidence of Maxwell's involvement.[7] However, there is no indication from the parties

---

[7] In its original memorandum in opposition to Tettleton's motion to sever, the Government stated that it had no evidence that Maxwell or Tettleton were involved in the prior deposit structuring [Doc. #62]; however, the Government recently filed a corrected memorandum stating only that it has

memoranda or the Government's notice of intent to use the 404(b) evidence that the evidence regarding Hutson's alleged prior deposit structuring implicates or even involves Maxwell, much less how it does so.[8]  As will be discussed below, the Government concedes that Hutson's statement to the FBI implicates Maxwell, but it is unclear whether such statement is the source of the 404(b) evidence.

Although "[a] risk of prejudice may arise when 'evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant," *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001) (citation omitted), the undersigned finds that, on the current record, the risk of prejudice to Maxwell and Tettleton from the potential admission of 404(b) evidence against Hutson is not so high as to warrant severance.  The Fifth Circuit has stated that "evidence of the reputation or past crimes of one co-defendant, although clearly inadmissible against the other co-defendants, does not ordinarily justify severance."  *United States v. Rocha*, 916 F.2d 219, 228 (5th Cir. 1990) (citation omitted).  The court has further held that "an appropriate limiting instruction is sufficient to prevent the threat of prejudice of evidence which is incriminating against one co-defendant but not another."  *Id.*

---

no evidence that Tettleton was involved in the prior structuring, and the Government's opposition memorandum regarding Maxwell's motion does not state that it has no evidence that Maxwell was involved.

[8] The Government's notice of intent to use the 404(b) evidence states that the evidence was mailed to Defendants [Doc. #35-1].  Given the fact that Defendants have sought an order requiring the Government to provide any witness statements and FBI-302's early and that the Government is opposed to this motion, one would be inclined to assume that the 404(b) evidence the Government mailed to Defendants was not the FBI-302 statement and, therefore, that the source of the 404(b) evidence was not such statement.  Accordingly, the source of the 404(b) evidence is unknown.

In *Peterson*, four defendants were tried jointly for, *inter alia*, conspiracy to commit mail

fraud, wire fraud, and money laundering based on a telemarketing scheme in which the

defendants solicited fees for brokering land sales; the defendants misrepresented the number of

available buyers and the likelihood that the land would sell. 244 F.3d at 388. Prior to trial,

during, and at the conclusion of the trial, two of the defendants filed motions to sever based on

the Government's introduction of 404(b) evidence regarding a separate defendant's training of

other telemarketers to make misrepresentations following the events giving rise to the trial; the

trial court denied the motion. *Id.* at 392-93. On appeal, the Fifth Circuit upheld the district

court's denial of the motion to sever, finding that "the risk of prejudice was not so high that it

could be cured *only* by severance." *Id.* at 393. Rather, a limiting instruction to the effect that the

evidence against the separate defendant was not to be considered in assessing the guilt of the

remaining defendants was sufficient. *Id*. at 394; *see also United States v. Davis*, 546 F.2d 617,

620 (5th Cir. 1977) (upholding district court's denial of severance in case in which defendants

were charged with conspiracy and substantive counts regarding importation of marijuana based

on the fact that evidence of codefendant's prior drug dealings for purpose of showing intent;

limiting instructions were sufficient).

In the case *sub judice*, the Government intends to introduce evidence that Hutson

structured a deposit on a prior occasion. The undersigned finds that this 404(b) evidence is no

more prejudicial than that held not to warrant severance in *Peterson* and *Davis*.[9] The evidence is

---

[9] Defendants rely on *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005), however, the facts of that case, which did not involve Rule 404(b) evidence, are distinguishable from those at bar given that the Fifth Circuit's decision that severance was warranted was admittedly heavily influenced by the fact that (1) one of the defendants fled before the trial and therefore was not present during the trial; 2) evidence presented against the absent co-defendant greatly outweighed that

not such that the jury will be unable to "sort out the evidence and view each defendant and the evidence relating that defendant separately."  *United States v. Merida*, 765 F.2d 1205, 1219 (5th Cir. 1985).  As noted above, it remains unclear whether the 404(b) evidence the Government intends to introduce involves Maxwell; without this information or any indication as to the substance of the evidence if it does in fact involve Maxwell, there is no basis for any other finding than that any risk of prejudice to Maxwell and Tettleton may be cured by an adequate limiting instruction.  Therefore, Defendants' motions to sever on this ground are **DENIED**.[10]

**C.  Deprivation of Right to Call Codefendants to Testify**

Defendants next contend that severance is warranted on the ground that they will be deprived of the right to call their codefendants to testify at trial on their behalf.  Defendants argue that one or more of their codefendants would "establish by their testimony that [Maxwell, Tettleton, or Hutson] did not conspire with them, aid or abet, or otherwise participate with them, as to the offenses set forth in the indictment."  The Fifth Circuit has held that "[i]n order to establish a prima facie case warranting severance for the purpose of introducing exculpatory

---

presented against the present defendant; (3) the jury was permitted to hear a significant amount of inadmissible evidence (as it pertained to the present defendant); and (4) and there was little evidence against the present defendant.  *Id.* at 673-75.  Also distinguishable is *United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998), which involved evidence related to a violent motorcycle gang which shot up the house of an individual who owed a drug debt; the court held that severance was warranted because two of the defendants had no involvement with the motorcycle gang and had exited the conspiracy prior to the gang's activities.  *Id.* at 248.  The risk of prejudice regarding the evidence in this case simply does not rise to the level of that associated with the highly inflammatory evidence of violent criminal activity in *Cortinas*.

[10] To the extent that Hutson joins in his codefendants' motion to sever on this ground,  such is denied given that it is against him that the 404(b) evidence will be introduced and, therefore, there is no basis for severance.

testimony of a co-defendant, the defendant must show: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant would in fact testify if a severance was granted." *United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996).

Defendants have failed to establish a prima facie case for severance as they have failed to demonstrate both the substance of the alleged exculpatory testimony and their codefendant(s)' willingness to testify. They submit only conclusory allegations regarding the exculpatory nature of the testimony from a codefendant without any affidavit or any other documentation supporting their assertions that such would in fact be the substance of such testimony. *See United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987) (noting that motion for severance was not supported by an affidavit of codefendant in upholding the denial of the motion); *United States v. DeSimone*, 660 F.2d 532, 540 (5th Cir. 1981) (finding that a codefendant's affidavit that was merely a "bare, conclusory assertion that he did not conspire with his co-defendants, nor they with him" to be insufficient to justify severance). Moreover, they have submitted nothing indicating that any codefendant would be willing to testify on their behalf at trial if severance was granted. *See Rocha*, 916 F.2d 219, 232 (5th Cir. 1990) (noting that a prima facie case requires proof that the codefendant would testify if severance were granted); *United States v. Pham*, 210 Fed.Appx. 236, 238 (5th Cir. 2006) (upholding district court's denial of severance based on the fact that codefendant did not express an "unequivocal" willingness to testify). Therefore, Defendants have failed to demonstrate that severance is warranted based on their need to call their codefendants to testify on their behalf at trial, and their motions on this ground are **DENIED**.

13

**D. Irreconcilable/Antagonistic Defenses**

Defendants next argue that severance is warranted because conflicting or irreconcilable defenses offered by them will lead to confusion for the jury because in order to believe one of the defendant's defenses they will have to disbelieve those of the other defendants. "'Defenses are antagonistic if they are mutually exclusive or unreconcilable, that is, if the core of one defendant's defense is contradicted by that of another.'" *United States v. Neal*, 27 F.3d 1035, 1046 (5th Cir. 1994) (quoting *United States v. Rojas-Martinez*, 968 F.2d 415, 419 (5th Cir. 1992)). However, as both the Supreme Court and the Fifth Circuit have held, "[s]everance is not automatically required when co-defendants present mutually antagonistic defenses." *United States v. Matthews*, 178 F.3d 295, 299 (5th Cir. 1999) (citing *United States v. Zafiro*, 506 U.S. 534, 538-39 (1993)).

In arguing that severance is required due to antagonistic defenses, Defendants state only that "if the testimony of other crimes evidence is to the effect that Mr. Hutson says Mr. Maxwell [or Tettleton] gave him certain advisals there can be no cross examination of Mr. Hutson as he can not be called to the stand because of his Fifth Amendment right; thus, presenting possible antagonistic defenses." Defendants do not sufficiently demonstrate how their inability to cross examine Hutson regarding any alleged "advisals" pertaining to the 404(b) evidence leads to the conclusion that they have mutually antagonistic defenses. Without any indication as to what potential advice Defendants are referring or any further information regarding possible defenses, the undersigned cannot find that Defendants have demonstrated mutually antagonistic defenses, certainly not to the extent that a limiting instruction will not suffice to eliminate any risk of prejudice. *See United States v. Stouffer*, 986 F.2d 916, 924 (5th Cir. 1993) (citation omitted)

14

("limiting instructions will often suffice to cure any risk of prejudice" from mutually antagonistic defenses).[11]  Therefore, Defendants have simply not made a sufficient showing that severance is warranted due to antagonistic defenses at this time.  Accordingly, their motions on this ground are **DENIED**.

### E.  Admission of Hutson's FBI-302 Statement

Defendants argue that the admission at trial of Hutson's FBI-302 statement could constitute a Sixth Amendment Confrontation Clause violation given that if Hutson does not testify, Maxwell and Tettleton will be denied their right to cross examination.  In support of this argument, Defendants state as follows:

> As a factual predicate for this argument, it is thought that the "gist" of the Government's case is that Mr. Hutson is alleged to have structured a prior transaction (year 2001); and if his FBI-302 statement contains this admission, then the FBI agent will be testifying as to what Mr. Hutson said to the FBI agent, with the agent testifying at trial as to an out of court statement which may inculpate Mr. Maxwell perhaps as to the first transaction; as well as the substance of the conversation that Mr. Maxwell [and Tettleton] and Mr. Hutson had as to the second transaction.  The evidence would come from an FBI agent testifying  as to what was told him by Mr. Hutson, not in court, but at the meeting when the 302 statement was taken from Mr. Hutson; that the statement would be subject to hearsay objections, objection as to denial of the right to cross examination and denial of the right to confrontation, as to Mr. Maxwell [and Tettleton], with reference to Mr. Hutson; and deny Mr. Maxwell [and Tettleton] his right to these Sixth Amendment protections.

Although Defendants cite no legal support for these contentions, it appears that they are making a *Bruton* argument.  In *Bruton*, the Supreme Court held that a criminal defendant's Sixth Amendment confrontation right is violated where a hearsay confession by his co-defendant inculpating the defendant is admitted into evidence, and the co-defendant does not testify.  *Id.* at

---

[11] Moreover, with regard to Tettleton, the Government has stated it has no evidence that Tettleton had any involvement in the events giving rise to the 404(b) evidence it intends to introduce against Hutson.

126. In this situation, limiting instructions alone are not an adequate remedy. *Id.* at 137.

However, "'*Bruton* is inapplicable unless the codefendant's statement 'directly incriminates the

non-confessing defendant without reference to other, admissible evidence.'" *United States v.*

*Lage*, 183 F.3d 374, 386 (5th Cir. 1999) (quoting *United States v. Mann*, 161 F.3d 840, 860 (5th

Cir. 1998)). Moreover, "even if a codefendant's out-of-court statement does directly incriminate

the non-confessing defendant, 'the Confrontation Clause is not violated by the admission of a

[such a statement] with a proper limiting instruction when ... the [statement] is redacted to

eliminate not only the defendant's name, but any reference to his or her existence.'" *United States*

*v. Scheur*, 547 F.Supp.2d 580, 590 (E.D.La. 2008) (quoting *Richardson v. Marsh*, 481 U.S. 200,

211 (1987)).

The Government concedes that Hutson's statement does implicate Maxwell and makes no

argument that the statement is not hearsay as to him; however, it argues that severance is not

required and that the proper course of action is to redact Maxwell's [or potentially Tettleton's]

name from the statement and for the Court to give an appropriate limiting instruction. The Court

agrees with the Government's contention in this regard. Without copies of the FBI-302 statement

or any information suggesting otherwise, the Court can only conclude, at this point, that

Defendants' objection could be remedied by a redaction of Hutson's statements. Severance at this

point would be premature. However, the Government is reminded that it bears the responsibility

of making any redactions necessary to ensure that Defendant is not denied his confrontation

rights. *See Boyett*, 2006 WL 3313746 at *2; *Gray v. Maryland*, 523 U.S. 185 (1998) (holding

that a redaction that replaces a defendant's name with an obvious indication of deletion, such as a

blank space, still falls within *Bruton's* protective rule).[12] Defendants are free to move for

severance at a later date once they have reviewed Hutson's statement or if they are unsatisfied

with the Government's redaction of such statement. [13] Therefore, Defendants' motions to sever

on this ground are **DENIED**.

As Defendants have not demonstrated that without severance they would suffer

compelling prejudice which would result in an unfair trial, severance is not warranted at this time

and Defendants' motions to sever [Document Nos. 52, 54, 77] are hereby **DENIED**.

**CONCLUSION**

For the forgoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions for

Rule 16 Discovery, Motions for Disclosure of Rule 404(b) Evidence, and Motions for Disclosure

of Rule 12(b)(4) Evidence are **DENIED** as moot, and that Defendants' Motions for Early

Production and/or Inspection of Witness Statements/Discovery of Exculpatory Evidence are

**DENIED** [Document Nos. 50, 51, 71, 72, 74, 75]].  Finally, it is **ORDERED** that Defendants'

motions to sever [Document Nos. 52, 54, 77] are **DENIED**.

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of April 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[12] The Government states that Maxwell's [or Tettleton's] name can be replaced with "an unnamed bank official."

[13] Again, as it is Hutson's FBI-302 statement, its potential admission does not constitute a *Bruton* violation as to him and therefore is not grounds for severance.